JOHN McKASY, Assignee, v. JOSEPH P. HUBER and Others.[1]

June 4, 1896.

Nos. 9893—(111).

**Partnership—What Constitutes.**

    The contract set out in the opinion construed, and *held* to constitute the persons executing it general partners.

**Pleading—Hypothetical Admissions.**

    Hypothetical statements or admissions may be made in an answer for the purpose of enabling a defendant to plead all of his defenses.

**Same—Partnership Contract.**

    Answer construed, and *held*, that it does not admit an allegation in the complaint that the defendants were partners, or the execution of a partnership contract referred to in the answer. *Held*, further, that, under the pleadings and evidence, the defendants were entitled to have the question of the execution of such contract by them submitted to the jury.

Appeal by Joseph P. Huber, H. G. Kruse and P. F. Dressel from an order of the district court for Le Sueur county, Cadwell, J., denying their motion for a new trial, after a verdict in favor of plaintiff for $577.25. Reversed.

*O. J. Parker* and *W. H. Leeman*, for appellants.

*Thomas Hessian*, for respondent.

START, C. J.   This action was commenced against the appellants, Huber & Co., and Phillip Dressel, Jr., and a number of other individuals and firms, to recover from them, as partners, under the firm name of the Le Sueur Slaughterhouse Company, their proportion of $4,300.41, upon an alleged account stated between the firm and E. R. Smith & Co. The latter firm were originally the plaintiffs herein, but, since the commencement of the action, the firm made an assignment to John McKasy, who has been substituted as plaintiff.

The complaint alleges generally that the defendants were partners, and that the firm became and was indebted to the plaintiffs for

[1] Reported in 67 N. W. 650.

money loaned, and that an account was stated between the parties. The answer of Huber & Co., a firm composed of Joseph Huber and H. G. Kruse, denies each and every allegation in the complaint, and each and every part thereof, and then alleges that the claim of the plaintiff that the answering defendants and the other persons and firms mentioned in the complaint were partners is based on an alleged written partnership contract which the plaintiffs assert was signed by such defendants, but at the time of the alleged signature of the alleged contract by the defendants the defendant Kruse was a minor. The complaint did not set out or allege any written contract of partnership, and the answer contained no direct admissions. The answer of Dressel was a general denial. Before the trial, all of the defendants, except the appellants and one other, paid their pro rata share of the account, and were released. The plaintiff had a verdict against the appellants for their share of the account. They made a joint motion for a new trial, and from an order denying their motion they appealed.

The appeal being from an order denying a joint motion for a new trial, if the order was right as to any one of the appellants, it must be affirmed as to all. Miller v. Adamson, 45 Minn. 99, 47 N. W. 452.

The plaintiff introduced a writing in these words: "We, the undersigned, agree to pay the respective amounts set opposite our names, for the purpose of erecting and building on grounds to be selected for slaughtering and dressing of hogs, cattle, sheep, etc., said sums, to be not less than $600 in all. We also agree to sign notes to borrow money, not to exceed two thousand dollars, for the purpose of carrying on said business. The management of said business shall be conducted by a superintendent and three others selected by us, and each share shall entitle the holder to one vote, and to such proportion of the net profits. In case of loss, assessment may be made not to exceed in all the amount subscribed by each. The subscriptions shall be in shares of twenty-five dollars each." Then follow names of signers and number of shares subscribed by each. There is evidence in the case tending to show that the Le Sueur Slaughterhouse Company commenced business under this contract. The instrument purported on its face to have been signed by Huber & Co. and Phillip Dressel & Son for one share each. The

trial court correctly held that the contract constituted all persons executing it general partners. They were to share in the profits and losses in the proportion of the capital contributed by each; that is, the amount of the shares subscribed by each. The limitations contained in the contract concerned the partners only. They could not thus limit their liability as partners as to persons dealing with the firm.

This contract was written in a record book, and it was admitted that the name "Huber & Co." was written in the book by the appellant Joseph Huber, a member of the firm. But he duly offered to show that he was requested to sign his name in the book for the purpose of subscribing the sum of $25 to aid in building a slaughterhouse in Le Sueur, and did so; that the contract received in evidence was not written in the book; and, further, that, when he signed the name of his firm in the book, it contained no other writing therein than the names of certain persons and firms. This was objected to by the plaintiff, as incompetent, irrelevant, and immaterial under the pleadings. The court sustained the objection, and subsequently instructed the jury to return a verdict against Huber & Co., to which rulings they duly excepted.

The reason for these rulings was, as we gather from the record, that the answer of Huber & Co. admitted the allegations of the complaint as to the partnership of the defendants, by admitting the execution of the partnership contract. A general denial in an answer puts in issue an allegation of the complaint that the defendants are partners. The statute (G. S. 1894, § 5255) refers to allegations as to the partnership of plaintiffs, not defendants. The affirmative allegations in the answer as to the claim of the plaintiff with reference to an alleged contract cannot be construed as qualifying the general denial. The hypothetical statement or admission in the answer was only made for the purpose of pleading the defense of infancy as to one of the defendants. It is not an admission of the alleged partnership, or of the execution of the alleged contract. It is well settled that such a mode of pleading is proper to enable the defendant to plead all of his defenses. Nunnemacker v. Johnson, 38 Minn. 390, 38 N. W. 351. The answer of Huber & Co. put in issue the partnership as to them, and, under the general denial, they had the right to prove any fact which tended to disprove the alleged

partnership; and the court erred in excluding their offer of evidence, and instructing the jury to return a verdict against them.

It is claimed by respondent that it conclusively appears that Huber & Co. took part in the meetings of the slaughterhouse company. We find no such conclusive evidence in the record, and are not referred to any. This aside, it is not sought to hold Huber & Co. on the ground that they had held themselves out as partners, or on account of any neglect on their part, but solely on the ground that their answer admitted the execution of the contract.

It was not claimed by the plaintiff on the trial that the appellant Dressel ever personally executed the partnership contract, but it is claimed that he authorized his brother Charles to sign the contract for him. This was denied by Dressel, who testified, in effect, that he agreed to donate $25 towards building a slaughterhouse, but that he never signed nor authorized the signing on his behalf of the contract. His brother Charles testified that he signed the name "Phillip Dressel & Son, $25," in the book, at the request of the person who was soliciting funds for a slaughterhouse, upon his brother's saying that he did not want any shares, but would donate $25. He testified that, when he so wrote the name in the book, there was no contract or writing therein except the names of persons. Joseph Huber testified on behalf of Dressel that, when he signed the firm name of Huber & Co. in the book (this was before the firm name of Dressel & Son was written therein), there was no writing in the book whatever excepting names. On the part of the plaintiff, there was evidence tending very strongly to show that these witnesses were mistaken, and that the contract was written in the book before any names were signed therein; but it is not, as respondent claims, conclusive. It was a question for the jury. But the only question the trial court submitted to the jury was whether the defendant authorized his brother Charles to sign the agreement contained in the book. The court assumed in its instructions that the contract was in the book when Charles wrote the firm name therein, and refused the request of the defendants to submit this question to the jury. This was error. The request referred to is the first special request of the defendants, which is not as clearly expressed as it might have been, but it is, in substance, sufficient.

We are also of the opinion that defendants' exception to the sub-

mission of the question of a ratification of the partnership contract by Dressel was well taken, for the reason that the evidence did not justify the submission.

Order reversed, and a new trial granted as to all of the appellants.