DAVID A. STUART vs. THOMAS LOWRY.

February 7, 1890.

**Requisites of Estoppel in Pais.**—An estoppel does not arise from the mere representations or conduct of a person, nor until the same shall have been acted upon by another.

**Same—Estoppel held not Complete.**—The owner of land induced the defendant to purchase it from a third person by representations that the latter was the owner. Before that purchase was effected, the owner conveyed the land to the plaintiff. *Held*, that the latter was not estopped to assert his title.

Action to determine adverse claims to lands in Anoka county. The defendant answered, claiming title in fee, and by consent a trial was had in Hennepin county, before *Young* and *Hicks*, JJ., who found these facts: On October 5, 1878, Fred G. Mayo (the common source of title) executed a power of sale mortgage to E. F. Rollins, which was duly recorded. On February 18, 1879, Rollins assigned the mortgage to Reuben H. Mayo, brother of Fred G., the mortgage and assignment being placed in the possession of Fred G., where they remained until March 7, 1879, when he procured Reuben to assign the mortgage to Farnham & Lovejoy. This assignment was acknowledged before a court commissioner of Polk county, Wisconsin, but the commissioner's certificate was not authenticated by any certificate of the clerk of the court as required by Gen. St. 1878, c. 40, § 9. Having obtained this assignment, Fred G. delivered it to Farnham & Lovejoy, and the two assignments were recorded. Default having been made, Farnham & Lovejoy caused the mortgage to be foreclosed under the power, and at the sale, on February 25, 1882, became the purchasers. The notice of sale was personally served on Fred G., who had full knowledge of all the proceedings, but took no steps to stop the sale. On December 12, 1885, no redemption having been made, Farnham & Lovejoy conveyed to Winthrop Young, who purchased in good faith, and paid a valuable consideration, without knowledge of the defect in the certificate of acknowledgment of the assignment by

Reuben H. After this the defendant visited the property, which was shown to him by Fred G., who resided upon it, and who told him that Young owned and desired to sell it, and soon afterwards Fred G. told Young that he thought he could sell it to defendant. Thereupon negotiations were had between Young and defendant, and defendant bought the property, paying for it $14,000 in cash, and received from Young a deed on May 5, which was recorded May 10, 1886. All this was done with Fred G.'s knowledge, and he made no claim of ownership or that the title was not in Young as appeared on the record. On May 1, 1886, Fred G. conveyed to plaintiff, and the deed was recorded May 3, 1886.

As conclusions of law the court held (1) that the record of the assignment from Reuben to Farnham & Lovejoy was validated by Laws 1885, c. 179; (2) that Fred G., by his act in procuring the assignment, by permitting the foreclosure without objection, and by afterwards acquiescing in it and in the conveyance to Young, was estopped to question the validity of the foreclosure. Judgment was accordingly ordered and entered for defendant, and plaintiff appealed.

*E. E. Cooley* and *W. E. Akers*, for appellant.

*M. B. Koon*, for respondent.

DICKINSON, J. This is a statutory action to determine adverse claims to real estate, both parties claiming title in fee. The land is the same as that sought to be recovered in an action of ejectment brought by this defendant against Frederick G. Mayo, our decision in which, filed in August, 1889, is reported in 41 Minn. 388, (43 N. W. Rep. 78.) The action of ejectment had been tried when this action was heard and determined, but our decision upon the appeal in that case had not been filed when this cause was decided in the district court. The greater part of the case now before us consists of the evidence which had been taken in the action of ejectment; that being received, by stipulation of the parties, as evidence in this case. A little additional evidence was also received. The opinion of this court in *Lowry* v. *Mayo*, above cited, states the most of the facts involved in this case. The following further statement may now be made: This plaintiff, Stuart, is the grantee of F. G. Mayo, of the land in question, by quitclaim deed executed *May 1, 1886*, and re-

corded *May 3, 1886.* The deed from Winthrop Young to the defendant, Lowry, was made *May 5, 1886,* and recorded May 10, 1886. It may be added, although it is not, perhaps, necessary, that, as was shown by the evidence and found by the court, Reuben Mayo in fact executed personally the assignment of the mortgage, which in the case of *Lowry* v. *Mayo* was found to have been executed by F. G. Mayo in the name of Reuben. It will be seen that the defendant Lowry claims title through the foreclosure of the mortgage executed by F. G. Mayo, and that the conveyance from Young, by which, if at all, he acquired title, was made May 5, 1886. The plaintiff, Stuart, claims by deed from the mortgagor, executed and recorded prior to the conveyance to Lowry. The decision of the district court was in favor of the defendant, and the plaintiff has appealed from the judgment.

The decision in *Lowry* v. *Mayo* is accepted by this respondent, as it must be, as having determined adversely to him some of the grounds upon which the decision under review was based; and we need only say now, as was decided in the case cited, that the foreclosure proceedings were unauthorized and void, and that the title remained in the mortgagor, Mayo, unaffected by the attempted foreclosure. But the court found that, after the purchase of the property by Young from the persons who had purchased it at the foreclosure sale, Mayo told Lowry that Young was the owner of it, and desired to sell it, and that Mayo also told Young that he thought he (Young) could sell the land to Lowry. The court considered that Mayo was estopped to dispute the title thereafter acquired by Lowry by purchase from Young, and that, as was considered, the estoppel being complete before Stuart purchased from Mayo, he also was affected by the estoppel. The respondent contends that upon this ground of estoppel the judgment should be sustained.

We shall assume that the evidence justified the finding and conclusion that Mayo's representations and conduct were such as would have estopped him from asserting a title as against Lowry after he had purchased from Young. But an estoppel did not arise merely from the representations to Lowry that Young owned the property, nor from any efforts Mayo may have made to bring about the sale.

There was no complete basis for an estoppel until, through such means, Lowry actually purchased from Young. But some days before that event, Mayo, who was really still the owner of the property, subject to the mortgage, conveyed to Stuart, and the deed was recorded. At the time of that conveyance and recording there was no existing basis of facts upon which an estoppel could be founded. Mayo was not *then* estopped to dispute the title of Young, and of course his grantee, Stuart, was not. Mayo's title to the land passed to and became vested in Stuart, and the title of the latter was on record before Mayo became disabled to assert the title to have been in himself. The title thus acquired by Stuart could not be subsequently divested by Lowry's purchase from Young, who in fact had not the title. The defendant's claim of title, as the case is now presented, can rest only upon the ground that the plaintiff, to whom the legal title was actually conveyed, is estopped to assert that title as against the defendant, a subsequent purchaser from another person than the plaintiff's grantor, such person in fact having no title. The principle of estoppel is inapplicable. It is immaterial, as the case is now presented, whether Stuart paid a valuable consideration or not.

Judgment reversed.